# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **KIMBERLY DIANE FLECK,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:15-cv-01293-MHH |
| } | |
| **CAROLYN COLVIN,** } | |
| **Commissioner, Social Security** } | |
| **Administration,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

This case is before the Court for review of a report and recommendation concerning the termination of plaintiff Kimberly Diane Fleck's disability insurance benefits. In the report, the magistrate judge recommended that the Court affirm the Commissioner's decision that Ms. Fleck is no longer disabled. (Doc. 14). Ms. Fleck objects to the magistrate judge's recommendation. (Doc. 15; Doc. 19). This opinion addresses Ms. Fleck's objections.

## STANDARD OF REVIEW

A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party objects to a report, a district court must "make a *de novo*

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §§ 636(b)(1)(B)-(C). A district court reviews legal conclusions in a report *de novo* and reviews for plain error factual findings to which no objection is made. *Garvey v. Vaughn*, 993 F.2d 776, 779 n. 9 (11th Cir. 1993); *see also LoConte v. Dugger,* 847 F.2d 745, 749 (11th Cir. 1988); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006).

Ms. Fleck lodges four objections to the magistrate judge's recommendation, one of which concerns a factual determination regarding malaise, a sign or symptom of lupus under listing 14.02. Because the Court sustains this objection and remands the case to the Commissioner for further administrative proceedings, the Court does not reach Ms. Fleck's other arguments for relief.[1]

---

[1] For her other objections, Ms. Fleck argues that the magistrate judge did not properly apply the law concerning the ALJ's credibility determination. (Doc. 15, pp. 4-7). In addition, Ms. Fleck objects to the holding that the ALJ was not required to explicitly discuss whether Ms. Fleck meets a listing. (Doc. 15, pp. 1-2). The magistrate judge properly recited the law regarding an ALJ's obligation to consider the Listings. (*See* Doc. 14, pp. 7-8). The Eleventh Circuit has explained that "[t]he ALJ's finding as to whether a claimant does or does not meet a listed impairment may be implied from the record." *Prince v. Commissioner, Social Sec. Admin.*, 551 Fed. Appx. 967, 969 (11th Cir. 2014) (citing *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986)). "Furthermore, while the ALJ must consider the Listings in making its disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to her determination.'" *Id.* (quoting *Hutchison*, 787 F.2d at 1463)). In *Hutchison*, the Eleventh Circuit noted: "There may be an implied finding that a claimant does not meet a listing. *Edwards v. Heckler,* 736 F.2d 625, 629 (11th Cir. 1984). We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments." *Hutchison*, 787 F.2d at 1463. Although an ALJ need not make explicit findings regarding listed impairments, an ALJ's analysis must demonstrate to the Court that the ALJ considered evidence relevant to the listing. As explained below, in this case, the ALJ's discussion of the medical evidence does not account for certain diagnoses and reported symptoms that support Ms. Fleck's arguments concerning her impairment of lupus, so the Court cannot determine whether the ALJ considered that evidence or the related lupus listing.

In making a *de novo* review of the factual findings to which Ms. Fleck objects, the Court "review[s] the ALJ's 'factual findings with deference.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)). The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court must accept the magistrate judge's recommendation and "must affirm [the Commissioner's decision] even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r of Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

3

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## ANALYSIS

This social security case concerns the termination of Ms. Fleck's disability benefits. Therefore, as the magistrate judge stated, the burden in this case rests not on Ms. Fleck, as in the typical case involving an initial claim for benefits, but on the Commissioner. (Doc. 14, p. 4) ("'Pursuant to 42 U.S.C. § 423(f) and the implementing regulations, in a termination case the burden is placed on the Commissioner to show the plaintiff has the ability to engage in substantial gainful activity.' *Cross v. Astrue*, 659 F. Supp. 2d 1216, 1224 (N.D. Ala. 2009) (citing *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)."). As the Fifth Circuit explained in *Griego*, in a termination case:

> [t]he first part of the evaluation process [] focuses on medical improvement. . . .
>
> The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations. *See* 20 C.F.R. §§ 404.1594(b)(5) and (f)(7). The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings. In evaluating ability to engage in substantial gainful activity, the Secretary considers, first, whether the claimant can perform past relevant work and, if not, whether the claimant can perform other work. 20 C.F.R. §§ 404.1594(f)(7) and (f)(8).

*Griego*, 940 F.2d at 944.

In 2006, the Social Security Administration found that Ms. Fleck was disabled because of breast cancer and related impairments. (Doc. 6-3, pp. 16, 18). In December 2010, the Administration concluded that Ms. Fleck's medical condition had improved, and she was no longer disabled. (Doc. 6-3, p. 16). Ms. Fleck concedes that her breast cancer is not active; however, she contends that she remains disabled because of lupus and inflammatory arthritis. (Doc. 10, p. 1). Ms. Fleck argues that the ALJ erred by failing to find that she meets Listing 14.02 for lupus or Listing 14.09(D) for inflammatory arthritis. The Court considers only the lupus listing in this opinion.

The applicable regulations define systemic lupus erythematosus as "a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00(D)(1)(a). Major organs or body systems include:

> [r]espiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis).

*Id*. Listing 14.02 for systemic lupus erythematosus (SLE) requires a lupus diagnosis with:

5

    A. Involvement of two or more organs/body systems, with:

    1. One of the organs/body systems involved to at least a moderate level of severity; and

    2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

    or

    B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

    1. Limitation of activities of daily living.

    2. Limitation in maintaining social functioning.

    3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § 404, Subpt. P, App. 1, § 14.02.

Although an ALJ may make implicit findings regarding the listings, *see supra* note 1, "[a] clear articulation of both fact and law is essential to [the Court's] ability to conduct a review that is both limited and meaningful." *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984). The Court cannot tell from the ALJ's opinion whether the ALJ considered listing 14.02. In concluding that Ms. Fleck "did not have an impairment or a combination of impairments which met or medically equaled" a listing, the ALJ stated, "[s]pecifically, evidence has not shown limitations consistent with listing 14.01, regarding immune system disorders or listing 14.09, regarding inflammatory arthritis, with objective findings

6

discussed in more detail below." (Doc. 6-3, p. 18). The ALJ did not specifically mention listing 14.02. In assessing Ms. Fleck's RFC, the ALJ focused on certain aspects of the treatment notes from Ms. Fleck's physicians and intimated that Ms. Fleck might not even have lupus.[2] For example, the ALJ described a record from Ms. Fleck's September 2011 visit to the Vanderbilt University Medical Center Rheumatology Clinic. The ALJ pointed out that the examining physician felt that Ms. Fleck, at worse, had a mild case of lupus. (Doc. 6-3, p. 23).

    The ALJ then discussed select findings in records from Ms. Fleck's local rheumatologist. Citing a January 2012 record, the ALJ stated that Ms. Fleck reported neck and back pain and "significant depression" but no other significant symptoms. (Doc. 6-3, p. 24). The record to which the ALJ referred states that Ms. Fleck "feels miserable and feels like taking her life off [sic]. She's taking her depression pill regularly." (Doc. 6-13, p. 32). The "Assessment and Plan" section of the record states "has active lupus." (Doc. 6-13, p. 32). With respect to an April 2012 record, the ALJ noted that Ms. Fleck "had stopped her medication for lupus" and "she felt much better." (Doc. 6-3, p. 24). The corresponding record states that Ms. Fleck had "active lupus," and her doctor gave her new prescriptions. (Doc. 6-13, p. 31). Citing a record from August 2012, the ALJ stated that Ms.

---

[2] At stage four of her analysis, the ALJ stated that as of December 2010, Ms. Fleck had the "medically determinable impairment[]" of lupus, but the ALJ did not indicate whether she regarded lupus as a severe or a non-severe impairment. (Doc. 6-3, p. 18).

7

Fleck "continued to do well" and was "'stable.'" (Doc. 6-3, p. 24). That record confirms few lupus symptoms other than abdominal problems (Doc. 6-13, p. 30), but a record from September 2012 reflects that Ms. Fleck returned to her rheumatologist two weeks later complaining of a "rash around her mouth" and "some increased pain." Dr. Jampala found that Ms. Fleck was developing "some knots in her left index finger." Dr. Jampala once again diagnosed "active lupus" and stated that Ms. Fleck was experiencing a "lupus flare up and possible rash from lupus." (Doc. 6-13, p. 29).

Describing a record from November 2012, the ALJ wrote: "the claimant reported her depression was not too bad. While she reported dryness in her eyes, she had no loss of vision or double vision. There was no joint swelling." (Doc. 6-3, p. 24). The record that the ALJ cited also states:

> Patient continues to feel miserable. She has pain all over. Some of her medicines were changed her [sic] and her depression is not too bad. She has neck pain and has lot of headache. She continues to have significant dryness in the eye and pain. . . . Patient feels cold in her feet and always numb. She has pain in her abdomen. She has small cyst in her left third finger. It is not hurting.

(Doc. 6-13, p. 28). Her other systems were negative. Dr. Jampala maintained a diagnosis of "active lupus," stated that Ms. Fleck had "ongoing problem with her pain. She has lot of stress," and added Trazadone to Ms. Fleck's prescription medicine regime. (Doc. 6-13, p. 28).

8

Thus, the administrative record, viewed in its entirety, suggests that the ALJ may have overlooked the portions of Ms. Fleck's records that may support a finding that Ms. Fleck meets the lupus listing. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (If the record viewed in its entirety indicates that the ALJ "focus[ed] upon one aspect of the evidence and ignor[ed] other parts of the record," then the reviewing court "cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole."). The medical records in the administrative record demonstrate that several doctors have diagnosed Ms. Fleck with lupus. (*See e.g.*, Doc. 6-11, p. 36; Doc. 6-13, pp. 26-33; Doc. 6-23, p. 13).

In his report, the magistrate judge found that substantial evidence in the administrative record indicates that Ms. Fleck does not meet Listing 14.02 for lupus because "the record does not support a finding [Ms. Fleck] has two of the constitutional symptoms or signs." (Doc. 14, pp. 9-10). As stated above, those constitutional symptoms or signs are severe fatigue, fever, malaise, or involuntary weight loss. The magistrate judge found, and the undersigned agrees, that "considerable medical evidence support[s] a finding of chronic fatigue." (Doc. 14, p. 9; *see also* Doc. 6-3, p. 46; Doc. 6-8, p. 56; Doc. 6-10, p. 53; Doc. 6-11, pp. 34,

40, 61; Doc. 6-12, pp. 11, 33, 38; Doc. 6-13, pp. 26, 39; Doc. 6-14, p. 6; Doc. 6-15, p. 17; Doc. 6-21, p. 3; Doc. 6-30, p. 19). The magistrate judge also concluded that references in the medical evidence to "ICD-9-CM code 780.79 – Other malaise and fatigue," were insufficient to support a finding that Ms. Fleck suffers from malaise, a symptom that would give Ms. Fleck the two constitutional signs or symptoms that listing 14.02 requires. (Doc. 14, pp. 9-10).[3]

The ALJ's analysis contains no discussion of the standard for malaise or the distinction between fatigue and malaise. According to the Social Security regulations, "[s]evere fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function. Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 14.00(C)(2). In addition to the records discussed above, many of Ms. Fleck's records contain evidence of "feelings of illness, bodily discomfort, or lack of well-being." And there are records that indicate that Ms. Fleck suffers not only from severe depression but also from other reduced mental functions. (*See*, *e.g.* Doc. 6-10, p. 65) (July 2007 record noting diagnosis of decreased short-term memory and referral to Neurology "to have her memory

---

[3] The magistrate judge stated that the diagnoses of other malaise and fatigue "could potentially indicate a finding of malaise," and they "could just as likely reference the physicians' explicit findings of fatigue." (Doc. 14, pp. 9-10).

changes evaluated more closely, as I think that her pattern of memory loss is a little bit more unusual timing-wise from her chemotherapy and is persistent."); (Doc. 6-10, p. 63) (April 2008 record reflecting memory trouble with referral for neurocognitive retraining); (Doc. 6-10, pp. 53-54) (December 2008 record noting cognitive difficulties with "mental fog"; record contains instruction that Ms. Fleck should begin stretching exercises and a walking program); (Doc. 6-10, p. 55) (March 2009 record explaining that because of pain in her calf, Ms. Fleck had "to stop after she walks a few yards. Once she rests and she can feel better and she can walk back again. She does regular walking and she goes swimming . . . lupus has history of connective tissue disease"); (Doc. 6-14, p. 6) (May 2012 record from neurological clinic examining cognitive dysfunction and noting that Ms. Fleck reported "a significant amount of worsening of her cognition," though her depression was under control); (Doc. 6-15, p. 17) (November 2012 record describing "very disruptive" headaches that "can occur more than 4 times a day").

      The Court expresses no opinion about the significance of these records; that is for the ALJ to decide. The Court merely identifies the records and notes that they may be pertinent to an examination of malaise. Also relevant is the fact that one of Ms. Fleck's treating physicians wrote in four separate records "780.79 – other malaise and fatigue." (Doc. 6-10, p. 19; Doc. 6-12, p. 15; Doc. 6-26, p. 32; Doc. 6-26, p. 36). As the magistrate judge observed, it is not clear from these

notations whether the physician, Dr. Haley, was diagnosing only malaise or fatigue or both malaise and fatigue.  The record does not indicate that the ALJ contacted Dr. Haley to ask for clarification.  "Social security disability proceedings are inquisitorial rather than adversarial."  *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).  "[A]n ALJ should recontact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled."  *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010).[4]  Logically, the obligation to recontact a treating physician is more pressing in a termination setting like this one.

**CONCLUSION**

For the reasons stated above, the Court will remand this action to the Commissioner for further administrative proceedings consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 30, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[4] *See also* SSR 96-5p, 1996 WL 374183, at *6 ("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."